**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**TIMOTHY CRAIG DUKE**                                                 **PLAINTIFF**

**VS.**                 **CASE NO. 4:16CV00247 PSH**

**NANCY A. BERRYHILL, Acting Commissioner,
    Social Security Administration**                             **DEFENDANT**

**ORDER**

     Plaintiff Timothy Craig Duke ("Duke") appeals the final decision of the Commissioner of the Social Security Administration (defendant "Berryhill") to deny his claim for Disability Insurance Benefits ("DIB"). Duke first contends he was prejudiced when the Appeals Council did not allow him to submit additional information. He then cites three alleged errors of the Administrative Law Judge ("ALJ"): error in assessing his credibility, in determining his residual functional capacity ("RFC"), and in relying upon the vocational expert's testimony regarding transferable skills and vocational adjustment. For his fifth and final argument, Duke contends remand or reversal is necessary because of new material evidence. The parties ably summarized the medical records and the testimony given at the administrative hearing on December 22, 2015. (Tr. 31-49). The Court has carefully reviewed the record to determine whether there is substantial evidence to support Berryhill's decision. 42 U.S.C. § 405(g).

     *Administrative Hearing:* Duke and a vocational expert testified at the administrative hearing.[1]

---

[1] A motion to amend the onset date for disability purposes was made and granted at the outset of the

Duke, who was 64 at the time, testified he worked as a dentist from 1975 until about 2008. Duke stated he sold his dental practice in 2009 because of health problems, including fatigue, depression, bypass surgery, alertness and sleep issues, and accompanying confusion. Duke identified sleep issues as "the biggest problem." (Tr. 36). He stated he could fall asleep at any time, despite medications and the use of a CPAP device. Duke stated he was last seen by sleep specialist Dr. Paul Wylie ("Wylie") on January 23, 2014.

In describing his daily activities, Duke said he never recovers from sleep regardless of whether he sleeps 10-14 hours at night. He also indicated he slept "an hour or two at lunch every day" and had "some difficulty with memory and confusion, very slight." (Tr. 38). According to Duke, he takes multiple drugs to counter the sleep issues, and the side effects include hypertension and irritability. He also found the medications were not particularly effective, and used caffeine and nicotine[2] to self-medicate. Although he deals with vertigo and tinnitus, Duke did not describe major problems with these impairments. When asked about working full time five days a week, Duke answered:

> I don't really think I'm capable to doing that. I, I hate to admit it, but I, I, I, I always slept from 12:00 to 1:30 when I was working and then, you know, a lot of times I'd come home – I'd wake up the next morning in my scrubs. But now I don't, I don't have activity that – I can stay awake for something like this, but I'll sleep on the way home. But, you know, I could stay alert as long as I'm pushing nicotine or, or taking a medicine and coffee.

(Tr. 42). Duke also stated the nicotine, coffee, and medication no longer are effective for him. Duke testified Wylie first informed him of the sleep disorder in 2001. Also, Wylie first informed Duke

---

hearing. The amended onset date is May 11, 2011. (Tr. 33).

[2] Duke stated he did not know he had a sleeping disorder in 1983, when he began to use nicotine as a stimulant. (Tr. 40).

that he was disabled when Duke began the application process for social security retirement benefits.

The ALJ posed a hypothetical question to the vocational expert, asking her to assume a worker over 60 with past relevant skilled work as a dentist, who could perform medium work except he could never climb ladders and scaffolds, could only occasionally balance, and must avoid unprotected heights, moving mechanical parts, and hazards. The expert testified that such a worker could perform his past relevant work as a dentist. Also, the vocational expert indicated such a worker could perform the past relevant work even if the work level were changed from medium to light in the hypothetical question. The vocational expert also testified that some of the hypothetical worker's skills would be transferable and, as a result, the worker could perform the sedentary jobs of insurance checker and claims examiner. (Tr. 34-48).

In her January 2016 decision, the ALJ found Duke to have severe impairments of obstructive sleep apnea, narcolepsy, ischemic heart disease – status-post coronary bypass,[3] hypertension, and obesity. The ALJ determined Duke had the RFC to perform medium work except for never climbing ladders or scaffolds, only occasionally balancing, and avoiding unprotected heights and moving mechanical parts. The ALJ found Duke was "not entirely credible." Further, the ALJ considered Wylie's opinion and assigned it "little weight" because it was vague and not consistent with the other evidence of record. (Tr. 23). Relying upon the testimony of the vocational expert, the ALJ determined Duke was capable of performing his past relevant work as a dentist. Additionally, the ALJ found Duke could perform the jobs of insurance checker and claims examiner. (Tr. 14-24).

**Claim one: Duke was prejudiced when the Appeals Council did not allow him to submit additional information**.

---

[3] Duke's bypass surgery was performed in 2004. (Tr. 22).

The ALJ's decision was issued on January 26, 2016. Duke appealed to the Appeals Council, which acknowledged the appeal in a letter dated March 14, 2016. This letter also informed Duke that he could submit additional new and material evidence, and further stated that the Appeals Council would "not act for 25 days." (Tr. 6). Despite this representation, the Appeals Council denied Duke's appeal on March 31, 2016, seventeen days after the letter. Duke contends he was prejudiced because the Appeals Council did not review a letter (docket entry no. 10-1) from Duke to his attorney explaining the extent to which Duke participated in an elk hunting trip. The one page letter, dated April 11, 2016 (28 days after the Appeals Council's March 14 letter), clarifies that Duke did not hike or hunt like he once did. Instead, the letter states he relaxed while others hunted.

There is no merit to this claim. Duke's second claim for relief, error in his credibility assessment, will be addressed in more detail. However, for purposes of this initial claim we observe that the ALJ mentions medical notes[4] from October 2014 indicating Duke had been on an elk hunt in New Mexico and was returning for another hunt. (Tr. 20, 22). This citation by the ALJ played a part, though certainly not a pivotal factor, in the credibility analysis. Given the minor role of these medical notes, Duke's clarifying letter would not have changed the credibility analysis. In addition, Duke's letter was not composed until April 11, 2016, which was beyond the 25 day period provided for him to submit additional material. Duke was not prejudiced by the actions of the Appeals Council, and his first claim is without merit.

---

[4] The notes in question are from Dr. Bradley Hughes, a cardiologist who saw Duke on referral from Duke's treating physician, Dr. Clark Fincher. Dr. Hughes wrote: "He states that Dr. Fincher told him everything was 'WNL.' He states that he is intolerant of statins due to muscle aches and elevated liver enzymes. He does remain somewhat physically active and that he has been in New Mexico on an Elk hunt. He state that he leaves on Wednesday of this week to go back to New Mexico on a different Elk hunt. He states that the altitude does not seem to bother him. He feels just as short breath at altitude as he does here at home." (Tr. 338).

**Claim two: the ALJ erred in assessing Duke's credibility.**

The ALJ, citing SSR 96-7p and the relevant factors contained therein, concluded Duke's "medically determinable conditions and symptoms are not as severe as alleged." (Tr. 23). Prior to making this determination, the ALJ reviewed Duke's allegations, including those contained in his application, his statements at the administrative hearing, and his responses contained in a *Function Report – Adult*. The ALJ then considered the medical and psychological evidence in the record, including a reference to the elk hunting trips. The ALJ specifically addressed the February 2016 statement of Wylie that Duke should not practice as a dentist because no treatment was found effective in dealing with Duke's alertness issues. (Tr. 347-348). The ALJ assigned "little weight" to Wylie's opinion,[5] finding it vague and inconsistent with the other medical evidence. The ALJ outlined that other evidence, which showed conservative treatment, normal findings, some noncompliance, and no other medical opinion consistent with Wylie's. The ALJ's consideration of Wylie's statement was thorough and her discounting of the opinion warranted under the circumstances. Substantial evidence supports the ALJ's treatment of Wylie's statement, and it supports the general credibility assessment. The ALJ did not err in this regard.

**Claim three: the ALJ erred in determining Duke's RFC.**

Initially, we note that the RFC need not mirror the findings of any one physician, as the ALJ is not bound to choose any one physician and adopt his/her findings as the appropriate RFC. Instead, it "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence,

---

[5] Wylie treated Duke intermittently from 1999 through the February 2016 opinion that Duke could not work as a dentist. The treatment notes include a thorough undated summary from Wylie. Although Wylie does not opine in the summary that Duke was unable to work as a dentist, he does indicate the sleep disorder "has negatively affected your professional career and productivity." (Tr. 239-240).

including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Here, the ALJ found Duke capable of performing medium work except he could never climb ladders or scaffolds, could occasionally balance, and he must avoid unprotected heights and moving mechanical parts. In reaching this conclusion, the ALJ discounted Duke's subjective allegations, as previously discussed. The ALJ also noted the type of treatment received by Duke, finding it inconsistent with treatment typically received by a disabled individual. Further, the medical records demonstrate Duke responded to treatments. Generally, the ALJ noted that treating physicians proceeded conservatively and did not opine Duke to be disabled. The ALJ's ultimate RFC determination is supported by substantial evidence. While the ALJ cites with favor the findings of the state agency physicians, we find the remainder of the record amply supports the ALJ's determination, and the findings of the state agency physicians do not appreciably add to the analysis. There is no merit to the challenge to the RFC ruling.

**Claim 4: the ALJ erred in relying upon the vocational expert's testimony regarding transferable skills and vocational adjustment.**

The ALJ, relying upon the testimony of the vocational expert, held Duke could perform his past relevant work as a dentist. In addition, the ALJ, again relying on the vocational expert, ruled that Duke had transferable skills which would permit him to perform other jobs, such as the jobs of insurance checker and claims examiner. Duke contends the ALJ erred in finding he could perform these clerical jobs. Duke submits this was error because the job of dentist and the two clerical jobs are not listed in the same workgroup in the *Dictionary of Occupational Titles ("DOT")*. Without any citation, Duke argues that being in different *DOT* workgroups demonstrates his skills are not

transferable to the clerical jobs. The vocational expert, however, testified to the transferability of Duke's skills, and explicitly stated her testimony was consistent with the *DOT* and its companion publication, and that her testimony was also based upon her knowledge, education, training, and experience. (Tr. 48). Without any legal authority to suggest a prohibition from a worker's skills being transferable to jobs in a different workgroup, this argument amounts to a disagreement with the vocational expert's conclusion. Duke makes other similar arguments concerning the transferability of his skills. We find no reason to discount the expert's testimony regarding transferability of skills.

The ALJ's finding on transferability of skills was an alternative finding. This is key, since the primary ruling of the ALJ was that Duke possessed the RFC to perform his past relevant work. Since we find this primary decision is supported by substantial evidence, the discussion regarding the alternative finding of transferable skills is an academic exercise, and any error in that regard would be harmless.

**Claim five: Remand or reversal is necessary because of new material evidence.**

Duke points to the February 2016 form executed by Wylie as new and material evidence mandating remand or reversal. This form was completed after the administrative hearing in December 2015 and prior to the Appeals Council's March 31, 2016 decision. The Appeals Council considered Wylie's statement, titled "Individual Disability Claim Form." (Tr. 1-5, 346-348). The Eighth Circuit Court of Appeals guides our consideration of such evidence:

> When the Appeals Council has considered material new evidence and nonetheless declined review, the ALJ's decision becomes the final action of the Secretary. We then have no jurisdiction to review the Appeals Council's action because it is a nonfinal agency action. *See Browning v. Sullivan,* 958 F.2d 817, 822 (8th Cir.1992). At this point, our task is only to decide whether the ALJ's decision is supported by substantial evidence in the record as a whole, including the new

> evidence deemed material by the Appeals Council that was not before the ALJ. As we have noted, "this [is] a peculiar task for a reviewing court." *Riley v. Shalala,* 18 F.3d 619, 622 (8th Cir.1994). Some circuits simply refuse to consider such tardy evidence as a basis for finding reversible error. *See Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir.1994); *Cotton v. Sullivan,* 2 F.3d 692, 695–96 (6th Cir.1993). But we do include such evidence in the substantial evidence equation.

*Mackey v. Shalala*, 47 F.3d 951, 953 (8th Cir. 1995). Under *Mackey*, then, our inquiry is whether the ALJ's decision is supported by substantial evidence, including a consideration of Wylie's February 2016 statement. Substantial evidence supports the ALJ's decision, even when Wylie's statement is considered. We reach this conclusion for two reasons. First, Wylie's statement runs counter to the other medical evidence of record, as previously stated. Second, Wylie's statement is not a significant departure from his earlier statement, contained in his undated letter,[6] which was a part of the record and considered by the ALJ. Generally, Wylie's opinions do not overcome the ample medical evidence to the contrary.

In summary, substantial evidence supports the decision of the ALJ, even taking into account the later statement of Wylie submitted to the Appeals Council. The arguments of Duke are without merit. We are mindful that the Court's task is not to review the record and arrive at an independent decision, nor is it to reverse if we find some evidence to support a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Berryhill is affirmed and Duke's complaint is dismissed with prejudice.

---

[6] In addition to providing a thorough summary of Duke's sleep issues dating from 1999, the undated letter also includes Wylie's opinion that Duke's "narcolepsy has never responded successfully to treatment and as a consequence the neurological disorder has negatively affected your professional career and productivity." (Tr. 240).

IT IS SO ORDERED this 13th day of March, 2017.

_____
UNITED STATES MAGISTRATE JUDGE